[Civ. No. 12436.   Second Appellate District, Division One.—April 19, 1940.]

In the Matter of the Estate of HENRY BURRE, Deceased. LUCY KORNBAU et al., Appellants, v. BERTHA E. KARRAS, Respondent.

J. E. Light for Appellants.

Oscar S. Elvrum and Girard F. Baker for Respondent.

DORAN, J.—This is an appeal from a judgment following an order granting a motion for a nonsuit.  Appellants herein, Lucy Kornbau and Georgia Burre, contested the probate of the will executed by their father, Henry Burre, who died on February 7, 1938.

The will, dated March 5, 1931, nominated the decedent's sister, Bertha E. Karras, respondent herein, as executrix, and devised and bequeathed all of the property of which he was possessed to her.

The facts as shown by the uncontradicted evidence are as follows: The decedent, Henry Burre, and his family formerly lived in the State of Missouri. In 1924 Mrs. Burre died and the home was broken up. The children were adults at the time; there were five daughters, all married except one, and two sons. Mr. Burre subsequently made a trip to his old home in Indiana to attend the funeral of his father. He there met his sister, Bertha E. Karras, and they joined in a plan to move to California, where they lived together with the respondent keeping house for the decedent, until 1930, when Mrs. Karras married. Thereafter Mr. Burre resided alone on a ranch in Lancaster about six miles from his sister's home, although he took most of his meals with her.

Mrs. Karras held certain property in joint tenancy with the decedent with regard to which she testified as follows: "Q. Isn't it a fact, Mrs. Karras, that you held certain property in joint tenancy with him? A. Yes, sir. Q. When did he acquire that property in joint tenancy? A. Well, as we went on I had money when we came to California, and as he did not have anything to make a living, so I took my $500.00, the $600.00 I had after my husband passed away, and the property that was sold at Vincennes that belonged to our father, that was part of the inheritance that he received also, and put into affairs to make our living together." Mrs. Karras testified that she helped her brother, who was a carpenter by trade, in many ways; for example, she testified, "I helped him dig cesspools there at the place, I helped put up a windmill. I helped him with sanding floors at different times, and I helped him get along before he received this money from his son."

In 1931, Mr. Burre received word that his son, Edward, who had been "missing" for about fourteen years, was dying in a hospital in Palo Alto, California. Mr. Burre and Mrs. Karras made a trip to the hospital to see him. At this time they met one George L. Lang, who was an attorney for the Legionnaires. The son died shortly thereafter, and apparently left his estate to his father. Mr. Burre again went to San Francisco to straighten out the son's affairs, and Mrs. Karras again accompanied him. Mr. Lang was consulted in

regard to the probate of the son's estate, and it was he who advised Mr. Burre to make his will. The will herein involved was drawn by Mr. Lang and executed in his office; it remained in the possession of the decedent or his attorney from that time until the decedent's death in 1938.

Mrs. Karras testified that she was not present when the conversation took place in Mr. Lang's office, wherein the decedent made known his intentions as to the provisions of the will.

In connection with the evidence relied upon by appellants, it is argued that the will drawn by the decedent was an unnatural will in that the contest is on behalf of his children and there was no evidence tending to show any discord or unnatural feeling between him and his children; that there was a presumption of undue influence in that the principal beneficiary sustained confidential relations with the deceased; that the principal beneficiary assisted in the drafting of the will, as evidenced by the fact that there were mistakes in the names of the decedent's children ''just as Mrs. Karras was in the habit of making them and as the decedent never made and which Lang, the attorney, being a stranger to the family, would not know unless told''; and, finally, that the burden of proof was on the beneficiary to show no coercion or undue influence, and that there was no evidence to support this burden.

From a review of the record it must be conceded that, although slight, there was some evidence to justify the foregoing argument, and sufficiently substantial to defeat the motion for a nonsuit. ''It is, of course, the general and well-understood rule that ordinarily upon a motion for a nonsuit, in civil cases generally, every inference favorable to plaintiff's case deducible from the evidence and every favorable presumption resulting fairly from the evidence must be taken in favor of plaintiff's case. This rule applies with equal force to cases of contests of wills. Of course, if the evidence is fairly susceptible of two constructions, or if several inferences may reasonably be made from the evidence as a whole, it goes without saying that the view most favorable to the contestant must be taken. And further, all of the evidence in favor of the contestant must, as against a motion for a nonsuit, be taken as true, and contradictory evidence, if any, must be disregarded. This having been

done, if there is any substantial evidence to prove the fact necessary to make out the contestant's case, the motion for a nonsuit must be denied and the case given to the jury.'' (*Estate of Newhall*, 190 Cal. 709, 719 [214 Pac. 231, 28 A. L. R. 778]. See, also, *Estate of Arnold*, 147 Cal. 583 [82 Pac. 252]; *Estate of Maescher*, 78 Cal. App. 189 [248 Pac. 537]; *Estate of Gallo*, 61 Cal. App. 163 [214 Pac. 496].)

█ Even though it might appear that the trial would have resulted in a judgment for respondent under and by virtue of the evidence adduced, it does not follow that the motion for a nonsuit should have been granted. To the contrary, in the light of the record and under the authorities, the motion for a nonsuit should have been denied.

For the foregoing reasons the order granting the motion for nonsuit is reversed, and the cause remanded for a new trial.

York, P. J., and White, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 2, 1940, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 17, 1940.